IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GLENN GOLDEN dba G2 DATABASE | * | |
| MARKETING | * | CIVIL ACTION: |
| | * | |
| VERSUS | * | |
| | * | JUDGE: |
| CLEAR ADVANTAGE MARKETING | * | |
| and affiliated entities; MARK MCKAMEY; | * | |
| TIM BOLLMANN; HARRY CARSTENSEN; | * | SECTION " " |
| WILD ROSE ENTERTAINMENT, LLLP; | * | |
| WILD ROSE CLINTON, LLC; | * | |
| CLINTON LLC; WILD ROSE | * | MAGISTRATE: |
| EMMETSBURG, LLC; DUBUQUE RACING | * | |
| ASSOCIATION dba Mystique Casino; | * | |
| and DOES 1 to 50 | * | |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Glenn Golden, doing business as G2 Database Marketing, and who complains and alleges upon information and belief the following causes of action:

I.      VIOLATION OF COPYRIGHT ACT, *17 USC §101, et seq;*

II.      VIOLATION OF LOUISIANA UNIFORM TRADE SECRETS ACT UNDER *LSA-R.S. §51:1431, et seq;*

III.      MISAPPROPRIATION OF TRADE SECRETS;

IV.      VIOLATION OF LOUISIANA UNFAIR BUSINESS PRACTICES ACT UNDER *LSA-R.S. §51:1405, et seq;*

V.      UNFAIR BUSINESS PRACTICES ACT;

VI.      FRAUD (by some defendants under *LSA-C.C. Art. 1953, et seq);*

VII.      FRAUD (by other defendants under *LSA-C.C. Art. 1953, et seq);*

VIII.      INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;

IX.      NEGLIGENT INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;

X.      NEGLIGENCE UNDER *LSA-C.C. Art. 2316;*

XI.   CONVENTIONAL OBLIGATIONS – WILD ROSE LICENSING AGREEMENTS AND NDA UNDER *LSA-C.C. Art. 1994;*

XII.  BREACH OF CONVENTIONAL OBLIGATION – JEFFERSON COUNTY CASINO FEASIBILITY STUDY UNDER *LSA C.C. Art. 1994;*

XIII. QUANTUM MERUIT – CASINO FEASIBILITY STUDY SERVICES RENDERED UNDER *LSA-C.C. Art. 1994;*

all in the following particulars:

## A.   *PARTIES AND THEIR ESSENTIAL FACTS*

1.   Plaintiff **GLENN GOLDEN, DOING BUSINESS AS G2 DATABASE MARKETING**, is a resident of Abita Springs, LA ("**G2**" or "**Plaintiff**"), and a citizen of Louisiana.  Plaintiff G2 is a small company operating in Abita Springs, LA, with annual revenues of less than $1 million.

2.   Plaintiff develops, maintains, and licenses different types of computer software used in the marketing departments of lawfully established casinos. Plaintiff's primary product is IDEA™ Data Warehouse software (the "**Licensed Database Software**").   The Licensed Database Software includes original, copyrightable works which feature database management, database warehousing, database queries, database extractions, sophisticated Excel report-writing, and casino marketing components.   Original and copyrightable components include computer code, creative content and non-literal elements such as structure, sequence, organization, graphics and appearance of the Licensed Database Software.  Plaintiff is the sole creator and sole owner of the Licensed Database Software, which is an original work of authorship entitled to copyright protection under *17 U.S.C. §§101, 501 et seq.*

3.   In addition, Plaintiff provides proprietary and confidential consulting services tailored to each customer's needs at any given time (the "**Proprietary Intellectual Property and Confidential Information**").  Plaintiff is the sole creator

and sole owner of the Proprietary Intellectual Property and Confidential Information. The Proprietary Intellectual Property and Confidential Information is proprietary and confidential intellectual property.

4.     Plaintiff's customers include lawfully established commercial casinos, Indian casinos, horse tracks and racinos, cruise ships, and other lawful gambling businesses in North America, South America and the Caribbean (the "**Hemispheric Gaming Market**").

5.     Plaintiff is a well-established competitor in the highly creative and entrepreneurial sector of the gambling business, where newly created computer software analyzes gaming data generated from an increasingly electronic casino environment.  This electronic information is used to propel casino marketing and player incentives, if only the massive amounts of raw data can be (i) put into a database for management; (ii) organized, "warehoused", "queried" and "extracted", so that (iii) marketing trends spanning years and even decades can be analyzed. Because the casino is a fixed-location entertainment center, and serves a local, surrounding population of players, database marketing is one of the primary business operations of lawfully licensed casinos.  To conduct database marketing, the casino staff requires (iv) Excel report-writing format in a great variety of sophisticated ways, for a great variety of sophisticated purposes, including "3-dimensional reporting"; and (v) software that can generate specific marketing "deliverables", such as mass emails, player credits and incentives, and the like.  This is exactly what the Licensed Database Software Product does.

6.     As an adjunct to licensing the Licensed Database Software Product to customers, Plaintiff also performs discrete assignments for individual casino clients. In return for consulting fees and other consideration (see below), Plaintiff performs

proprietary and confidential consulting services tailored to each customer's individual gaming market.   Plaintiff Glenn Golden has enormous personal experience in database marketing in the Hemispheric Gaming Market and is hired to help less-experienced casino staff react to specific marketing problems in a casino's local market.   Mr. Golden then generates Proprietary Intellectual Property and Confidential Information unique to that single casino customer, or applies other Proprietary Intellectual Property and Confidential Information unique to Plaintiff to that customer's local market situation.

7.     Plaintiff earns money from the Licensed Database Software Product in the form of (i) monthly licensing fees from customers, using a "subscription model"; or (ii) upfront payments for licenses and recurring maintenace payments, using the "software license model".   Plaintiff earns money from the Proprietary Intellectual Property and Confidential Information in the form of (iii) consulting fees, using a "consulting model"; (iv) report issuance fees, using a "report model"; and (v) agreements to work at reduced rates in return for installation of the Licensed Database Software Product at a later date, using an "on the come" model.   Together, these five revenue streams and sources provide nearly 100% of Plaintiff's operating income and profit.   As stated above, both are less than $1 million per year.

8.     Defendants **CLEAR ADVANTAGE MARKETING and Does 1-5** (collectively, "**Clear Advantage**") include one or more affiliated corporations, limited liability companies, partnerships or individuals, all of which are citizens of Florida or headquartered in Florida. There is a website for Clear Advantage, www.clearadvantagemarketing.com , and the physical address of 645 Bayway Blvd, Ste. C, Clearwater Beach, FL 33767, is identified as the headquarters for Clear Advantage.   However, there is no Florida Secretary of State filing for Clear

Advantage and so its form or forms are unknown.  Thus Plaintiff alleges that each of the affiliated entities or individuals referred to herein as "**Clear Advantage**" is an alter ego of every other Clear Advantage entity, including defendant Mark McKamey.  Clear Advantage may or may not have obtained any of the gaming licenses necessary for regulatory clearance to sell its products in jurisdictions in the Hemispheric Gaming Market.

9.      Defendant Clear Advantage develops, maintains and licenses database management and marketing software in the Hemispheric Gaming Market. Defendant is a business competitor of Plaintiff.  Defendant participated in the theft of the Licensed Database Software Product from Plaintiff, as well as some of the Proprietary Intellectual Property and Confidential Information, all in the manner set forth below.

10.      Until its theft of Plaintiff's intellectual property, none of Clear Advantage's products included the database management, database warehousing, database queries, database extractions, sophisticated Excel report-writing, and casino marketing components found in the Licensed Database Software Product. After the theft described below, Clear Advantage incorporated some or all of the same components into its software products, and sold or licensed them in the Hemispheric Gaming Market.

11.      Defendant **MARK MCKAMEY** is an owner and chief executive officer of defendant Clear Advantage.  Defendant McKamey is a citizen of Florida. As mentioned above, Plaintiff alleges that some or all of the Clear Advantage entities are alter egos of defendant McKamey. Defendant participated in the theft of the Licensed Database Software Product from Plaintiff, as well as some of the Proprietary Intellectual Property and Confidential Information, all in the manner set

forth below.

12.     Defendant **WILD ROSE ENTERTAINMENT, LLLP** is an Iowa limited liability limited partnership that is headquartered at 5465 Mills Civic Parkway, Ste. 400, West Des Moines, IA   50266.   Defendant **WILD ROSE CLINTON, LLC** is an Iowa limited liability company that is headquartered in the same location.  Defendant **WILD ROSE EMMETSBURG, LLC** is an Iowa limited liability company that is headquartered in the same location.  Collectively, they will be referred to below as "**Wild Rose**".   Wild Rose owns the Wild Rose Casino & Resort in Clinton, Iowa, a gaming establishment properly licensed by the Iowa Racing and Gaming Commission (the "**IRGC**").  In addition, Wild Rose also owns the Wild Rose Casino in Emmetsburg, Iowa, another gaming establishment properly licensed by the IRGC.

13.     From 2007 until 2015, Wild Rose was a licensed user of the Licensed Database Software in one or both locations.  In addition, from time to time, Wild Rose contracted with Plaintiff to develop and license Proprietary Intellectual Property and Confidential Information.  Defendant participated in the theft of the Licensed Database Software Product from Plaintiff, as well as some of the Proprietary Intellectual Property and Confidential Information, all in the manner set forth below.

14.     Defendants **TIM BOLLMANN** and **HARRY CARSTENSEN** were long-time employees of Wild Rose located at the Wild Rose Casino & Resort in Clinton, Iowa.  Both had regular access to the Licensed Database Software and some of the Proprietary Intellectual Property and Confidential Information.  Defendant TIM BOLLMANN is currently a citizen of Iowa and resides in or around Davenport, Iowa. Defendant HARRY CARSTENSEN is a citizen of Iowa and resides in or

around Clinton, Iowa. While acting within the scope and course of their employment at Wild Rose, both participated in the theft of the Licensed Database Software from Plaintiff, as well as some of the Proprietary Intellectual Property and Confidential Information, all in the manner described below.

15.    Defendant **DUBUQUE RACING ASSOCIATION, LTD.**is an Iowa not-for-profit corporation that is headquartered in Dubuque, Iowa, which does business as Mystique Casino ("**Dubuque RA**").  Dubuque RA owns the Mystique Casino in Dubuque, Iowa, a gaming establishment properly licensed by the IRGC. Dubuque RA was never a licensee of Plaintiff, but nonetheless has gained possession of, and now illicitly uses the Licensed Database Software, as well as some of the Proprietary Intellectual Property and Confidential Information, all without permission from Plaintiff.   Defendant participated in the theft of the Licensed Database Software Product from Plaintiff, as well as some of the Proprietary Intellectual Property and Confidential Information, all in the manner set forth below.

16.    The names and capacities of the Defendants sued herein as Does 1 through 50 inclusive are unknown to Plaintiff.  When Plaintiff ascertains the true identities and capacities of any of the Defendants named as Does herein, Plaintiff will seek leave of the Court to amend its Complaint accordingly.  Plaintiff is informed and believes that Does 1 through 50 are responsible in some manner for the acts and omissions alleged herein, and that none are citizens of Louisiana.

17.    Plaintiff is informed and believes, and on that basis alleges, that one or more defendants herein, including some of the Doe defendants, may be the agent, servant, employee or partner of, or acted in concert with, one or more of the remaining defendants, and acted within the purpose, scope, and course of said agency, service, employment, or partnership, with the express and/or implied

knowledge, permission, and consent of certain other defendant(s).

18.    In accordance therewith, facts proven at trial may show that some or all defendants may be jointly and severally liable for the conduct below, or may have conspired with other defendants when performing the conduct below.

## B.    JURISDICTION AND VENUE

19.    This Court has jurisdiction based upon two grounds:  (i) under 28 U.S.C. §1332, the complete diversity of citizenship between Plaintiff and all defendants and an amount in controversy in excess of $75,000; and (ii) under 28 U.S.C. §1331, federal questions arising under the Copyright Act, 17 U.S.C. §101 et seq and the Constitution, laws, or treaties of the United States. The total value of the stolen or misappropriated Licensed Database Software Product, and stolen or misappropriated Proprietary Intellectual Property and Confidential Information, is in excess of $1,000,000.

20.    Venue is appropriate in this District Court because (i) the situs of the intellectual property stolen or misappropriated is in this District; (ii) the location where the theft occurred, and other torts occurred, is within this District; (iii) Plaintiff is Citizen of Louisiana and resides in this District (Plaintiff G2 is headquartered and operates in this District as well); and (iv) the Wild Rose Licensing Agreements, the NDA or the Jefferson County Casino Feasibility Study (see below), were executed or performed in this District, or the breach of one or more of those agreements occurred here.

21.    Defendants all have sufficient nexus to this District, because (a) each stole or misappropriated the Licensed Database Software Product, whose situs is here; (b) each stole or misappropriated the Proprietary Intellectual Property and

Confidential Information, whose situs is here; (c) each committed torts against Plaintiff and the damage arising out of those torts occurred here; (d) Clear Advantage products are marketed or used in this District; and (e) one or more officers or leading employees of each defendant entity, and each individual defendant, visit this District on business or for pleasure.

## C.   INTELLECTUAL PROPERTY THEFT OR MISAPPROPRIATION BY DEFENDANTS CLEAR ADVANTAGE, BOLLMAN AND WILD ROSE

22.    In 2007, Plaintiff installed the Licensed Database Software Product at the Wild Rose Casino & Resort in Clinton, Iowa, and the Wild Rose Casino in Emmetsburg, Iowa, both owned by Wild Rose.  The Licensed Database Software Product was licensed to Wild Rose pursuant to written licensing agreements (the "Wild Rose Licensing Agreements").  The Wild Rose Licensing Agreements identified the Licensed Database Software Product as a licensed original work proprietary to Plaintiff.  To protect the Licensed Database Software Product, the Wild Rose Licensing Agreements contained language forbidding the use, copying, transfer or sale of the Licensed Database Software Product without express permission from Plaintiff.

23.    In addition, Plaintiff and defendant Wild Rose executed a Mutual Non-disclosure and Non-circumvention Agreement (the "NDA"), to protect both the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.

24.    The Licensed Database Software Product was used by Wild Rose at the Wild Rose Casino & Resort in Clinton, Iowa, until 2014.  It was used on a daily basis by defendants Bollmann and Carstensen within the scope and course of their

employment.   The Licensed Database Software Product was used at Wild Rose Casino in Emmetsburg, Iowa until at least January 2015.   Plaintiff updated the Licensed Database Software Product from time to time.  Plaintiff also licensed some Proprietary Intellectual Property and Confidential Information to Wild Rose for use at the Clinton location during this same period, which was used on a regular daily basis by defendants Bollmann and Carstensen within the scope and course of their employment.

25.     The Wild Rose Licensing Agreements and the NDA created obligations on Wild Rose and its employees not to use, copy, transfer or sell the Licensed Database Software Product, or the Proprietary Intellectual Property and Confidential Information, without express written authorization from Plaintiff.   No such authorization was given by Plaintiff.  The Wild Rose Licensing Agreements and the NDA also made Wild Rose liable for the actions of its employees, including defendants Bollman and Carstensen.  The Wild Rose Licensing Agreements and the NDA provisions specifically covered the illicit conduct of defendants Wild Rose, Bollmann and Carstensen.  The Wild Rose Licensing Agreements and the NDA provided for injunctive relief in case of breach by Wild Roe or its employees.

26.     Defendant Tim Bollmann was employed by Wild Rose as General Manager of the Wild Rose Casino & Resort in Clinton, Iowa, from 2007 through September 2013.   Defendant Harry Carstensen was employed as its Database Marketing Manager during the same period and reported directly to defendant Bollmann.   Defendant Carstensen remained Database Manager after defendant Bollman left and until February 2014.

27.     Defendant Bollmann left Wild Rose in September 2013 to become Senior Vice President of Major Accounts for Clear Advantage.  He joined his long-

time friend, defendant McKamey.  Defendant Clear Advantage hired Defendant Bollmann, in part because he possessed a stolen and misappropriated copy of the Licensed Database Software Product, and a stolen and misappropriated copy of some of the Proprietary Intellectual Property and Confidential Information.  Defendant Bollmann does not possess sufficient software skills to originate or develop any of the components of original copyrightable original work of the Licensed Database Software Product, so his theft was helped by defendant Carstensen, who has more computer skills.

28.    Defendants Bollmann, Carstensen, McKamey and Clear Advantage acted in concert to do two illicit things.  First, defendant Clear Advantage incorporated some or all of the components of the Licensed Database Software Product (and some Proprietary Intellectual Property and Confidential Information) into Clear Advantage's rudimentary database and marketing software, to create a new and far superior database marketing software product (the "Illicit Clear Advantage Software Product").  The Illicit Clear Advantage Software Product contains one or more original, copyrightable components from the Licensed Database Software Product, such as database management, database warehousing, database queries, database extractions, sophisticated Excel report-writing, or casino marketing components.  The Illicit Clear Advantage Software contains some or all of the Licensed Database Software Product's computer code, creative content, or non-literal elements such as structure, sequence, organization, graphics or appearance.

29.    And second, Defendants Bollmann, McKamey and Clear Advantage began marketing the Illicit Clear Advantage Software Product to lawfully established casinos in the Hemispheric Gaming Market, in competition with

Plaintiff.  They continue to do so today, and will continue to do so unless and until enjoined by this Court.

30.    Defendant Wild Rose is responsible for this illicit conduct by merit of (i) the Wild Rose Licensing Agreements; (ii) the NDA; and (iii) its common law and statutory liability as the employer of defendants Bollmann and Carstensen.

31.    Finally, as a direct result of this illicit conduct, at least one potential customer which planned to order and pay for the Licensed Database Software Product, or for some of the Proprietary Intellectual Property and Confidential Information, did not place its planned order with Plaintiff. Instead, at least this customer, and perhaps more, licensed the Illicit Clear Advantage Software Product instead. This has happened already, but will continue to happen in the future, without court action to enjoin the illicit conduct of Defendants, and the continued marketing of the Illicit Clear Advantage Software Product in the Hemispheric Gaming Market.

## D.    INTELLECTUAL PROPERTY THEFT OR MISAPPROPRIATION BY DEFENDANTS CARSTENSEN, DUBUQUE RA AND WILD ROSE

32.    Defendant Harry Carstensen was employed by Wild Rose as Database Marketing Manager of the Wild Rose Casino & Resort in Clinton, Iowa from December 2007 until February 2014.  During most of this time he reported directly to defendant Bollmann.  Defendant Carstensen remained Database Manager after defendant Bollman left.

33.    Encouraged by his work with Defendants Bollmann in the successful theft of intellectual property from Plaintiff, and the easy money that came from it, defendant Carstensen did the same when he left Wild Rose in or around February 2014.  Defendant Carstensen became the Database Marketing Manager for the

Mystique Casino owned by Dubuque RA.  He took some or all of the Licensed Database Software Product, and some or all of the Proprietary Intellectual Property and Confidential Information, with him.  Defendant Dubuque RA hired Defendant Carstensen, in part because he possessed a stolen and misappropriated copy of the Licensed Database Software Product, and a stolen and misappropriated copy of some of the Proprietary Intellectual Property and Confidential Information.

34.     Defendant Carstensen does not possess the combination of sufficient software skills, and sufficient casino marketing skills, to originate or develop the copyrightable original works of authorship in the Licensed Database Software Product.   However, he does contain sufficient computer skills to use and adapt the Licensed Database Software Product for use by unlicensed parties, such as Dubuque RA or Clear Advantage.

35.     Defendants Carstensen and Dubuque RA acted in concert illicitly.  Defendant Dubuque RA incorporated some or all of the Licensed Database Software Product (and some Proprietary Intellectual Property and Confidential Information) into its existing casino marketing operations.  Dubuque RA did not pay any fees or other moneys to Plaintiff; did not inform Plaintiff that it was using the Licensed Database Software Product (and some Proprietary Intellectual Property and Confidential Information); and received no permissions from Plaintiff.

36.     Defendant Wild Rose is responsible for this illicit conduct, by merit of (i) the Wild Rose Licensing Agreements; (ii) the NDA; and (iii) its common law and statutory liability as the employer of defendant Carstensen.

37.     Finally, as a direct result of this illicit conduct, Dubuque RA never purchased any license for the Licensed Database Software Product, or for some of the Proprietary Intellectual Property and Confidential Information.  It was a potential

customer of Plaintiff, but did not place any order with Plaintiff. Instead, it today uses the illicit copy of the Licensed Database Software Product, and some of the Proprietary Intellectual Property and Confidential Information, and will continue to do so unless enjoined by action of this Court.

**E.     *SEPARATE AND UNRELATED DISPUTE WITH DEFENDANT WILD ROSE: JEFFERSON COUNTY CASINO FEASIBILITY STUDY***

38.     Separate from its Licensed Database Software Product, the Wild Rose Licensing Agreement and NDA, Plaintiff worked on several special projects for Wild Rose.  Plaintiff worked on these special projects from time to time during the period 2008 to 2014.  These projects largely analyzed the feasibility of (i) new casino development projects which Wild Rose wanted to investigate and perhaps undertake; and (ii) the possible acquisition of existing casinos from other gaming companies.

39.     These projects included (i) possible site locations for new casino development projects in Nelson, Iowa; Warren County, Iowa; Rhythm City Casino in Davenport, Iowa; and two downstate casino sites in Illinois;  (ii) possible casino acquisitions or casino developments such as  Silver Slipper Casino in Mississippi; Boothill Casino in Kansas; casinos in  Blackhawk, Colorado and Cape Girardeau, Missouri; multiple casino locations in the St Louis Area; and a site in western Maryland; and (iii) "gray market" casino opportunities in Alabama.

40.     Some but not all of these site evaluations and market studies were done using Plaintiff's "on the come" model.  There was an express understanding that normal charges would be reduced or waived, in return for the agreement of Wild Rose to install the Licensed Database Software Product at any new casino it developed or purchased.

41.     On or about May 30, 2013, Wild Rose requested that Plaintiff provide an in-depth, formal site evaluation and market analysis for a new Wild Rose casino development project in Jefferson County, Iowa. Wild Rose contracted for casino market research, consulting services, and a casino market survey report in connecting with the location of a new Wild Rose casino in Jefferson County, Iowa (the "Casino Feasibility Study" and "Jefferson County Casino Feasibility Study Agreement").

42.     Under the Jefferson County Casino Feasibility Study Agreement, Plaintiff's "on the come" model was used.  Wild Rose agreed that it would compensate Plaintiff in two ways:  (i) payment of $5,000 up front, in lieu of a normal fee exceeding $50,000; and (ii) by licensing the Licensed Database Software Product for use at the new Wild Rose casino in Jefferson County, if it was eventually licensed and built.

43.     Pursuant to the Jefferson County Casino Feasibility Study Agreement, Plaintiff provided to Wild Rose the casino market research, consulting services, and a casino market survey report as required.  The Jefferson County Feasibility Study was used by Wild Rose and submitted to the IRGC as part of the Wild Rose application for a casino license.  In May 2014, the IRGC approved Wild Rose's application and the Wild Rose Casino in Jefferson County is licensed and currently being built.  It will be open next year, but unfortunately, Wild Rose has already told Plaintiff that it refuses to install the Licensed Database Marketing Software Product there.

**F.    DAMAGE ALLEGATIONS**

44.     As a result of Defendants' wrongful conduct above, Plaintiff suffered

the following damages, losses and costs:

    a.    The misappropriation, theft, or other losses in connection with the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.

    b.    Lost recurring income from the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.

    c.    Lost revenues and profits, as measured by some or all of the revenues, profits, cost savings, salary or commission earned by Defendants.

    d.    Lost future income from the Licensed Database Software Product Proprietary Intellectual Property and Confidential Information.

    e.    Lost business opportunities to exploit, enhance and earn revenues from its Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information.

    f.    Loss of business goodwill and business reputation in the business community of (i) lawfully established casinos in the Hemispheric Gaming Market; (ii) casino vendors with whom Plaintiff works, or competes, and that supply lawfully established casinos in the Hemispheric Gaming Market; and (iii) companies who supply equipment, goods and services to these vendors and Plaintiff.

    g.    Irreparable injury to Plaintiff's business operations, intellectual property, goodwill and reputation.

    h.    Contractual damages under the Wild Rose Licensing Agreements, the NDA and the Jefferson County Casino Feasibility Study Agreement, including but not limited to unjust enrichment, in an amount to be proven at trial, but estimated by Plaintiff to be at least $1 million. And,

i.    Plaintiff's costs and expenses, including but not limited to court costs, third party costs, attorneys' fees, accounting fees, expert fees and neutrals fees, travel costs and marketing costs, in connection with the enforcement of its rights.

## G.   *INCORPORATION OF ALLEGATIONS*

45.    All of the above allegations are incorporated in each cause of action below, as if set forth in full therein.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF COPYRIGHT ACT, 17 U.S.C. §101 ET SEQ**
**AS AGAINST ALL DEFENDANTS**

46.    Plaintiff is the sole owner of the Licensed Database Software Product, which is a valid, copyrightable, original work of authorship entitled to copyright protection under 17 U.S.C. §§101, 102, 501 et seq.

47.    Defendants had access to a copy Plaintiff's Licensed Database Software Product due to Wild Rose's purchase of two licensed copies of the Licensed Database Software Product.

48.    Defendants Clear Advantage, Bollman, Carstensen and Wild Rose stole or misappropriated Plaintiff's Licensed Database Software Product in violation of the Copyright Act, by copying or using one or more original components such as database management, database warehousing, database queries, database extractions, sophisticated Excel report-writing, or casino marketing components. Each of these original and copyrightable components include computer code, creative content and non-literal elements such as structure, sequence, organization,

graphics or appearance.  Defendants Clear Advantage, Bollman and Wild Rose violated the Copyright Act, by using, distributing, reproducing, publishing, copying, publicly displaying, or preparing a derivative work of Plaintiff's Licensed Database Software Product.

49.     Defendants Carstensen, Dubuque Racing Association and Wild Rose stole or misappropriated Plaintiff's Licensed Database Software Product in violation of the Copyright Act, by copying or using one or more original components such as database management, database warehousing, database queries, database extractions, sophisticated Excel report-writing, or casino marketing components. Each of these original and copyrightable components include computer code, creative content and non-literal elements such as structure, sequence, organization, graphics or appearance.  Defendants Carstensen, Dubuque Racing Association and Wild Rose stole or misappropriated Plaintiff's Licensed Database Software Product in violation of the Copyright Act, by using, distributing, reproducing, publishing, copying, publicly displaying, or preparing a derivative work of Plaintiff's Licensed Database Software Product.

50.     None of Defendants obtained Plaintiff's consent or authorization to use, distribute, reproduce, copy, publicly display, or prepare a derivative work of Plaintiff's Licensed Database Software Product.  Plaintiff first became aware of defendants' unlawful conduct in or around April 2015.

51.     Defendants' use of Plaintiff's Licensed Database Software Product, without Plaintiffs' consent or authorization, violated the United States Copyright Act, 17 U.S.C. § 501 et seq.  This same use also violated the Wild Rose Licensing Agreements or the NDA. Each of the Defendants' acted intentionally and knowingly.  None of defendants believed, or had any reasonable grounds to believe,

that their actions were lawful.

52.   Defendants' illicit actions impacted interstate commerce, and in particular, commerce in lawfully established casinos in the Hemispheric Gaming Market.  In addition, each of Wild Rose Casino & Resort in Clinton, Iowa; Wild Rose Casino in Emmetsburg, Iowa; Mystique Casino in Dubuque, Iowa; and Clear Advantage Company in Clearwater, Florida, conducts business activities that affect interstate commerce.

53.   As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.   As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

54.   Unless Defendants are enjoined and restrained by order of this Court, from these violations, Defendants will continue to infringe upon Plaintiff's Licensed Database Software Product.  They will continue to use, or market to others, infringing works including the Illicit Clear Advantage Software Product and the Dubuque RA database marketing software.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's Licensed Database Software Product, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Plaintiff has statutory and common law rights to injunctive relief, as well as its right to injunctive relief under the Wild Rose Agreements and the NDA.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF UNIFORM TRADE SECRETS ACT UNDER**
**LSA-R.S. § 51:1431, ET SEQ**
**AS AGAINST ALL DEFENDANTS**

55.    Plaintiff was in possession of various trade secrets, including information included in, and elements of, the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.   The Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information derive potential independent economic value because  (i) considerable time and effort were spent by Plaintiff in developing them; (ii) the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were not generally known to the public; and (iii)  the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were not generally known to other persons who could obtain economic value from their disclosure or use.

56.    In the alternative, whether constituting trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

57.    Plaintiff's efforts to maintain the secrecy of the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were reasonable under the circumstances.  In reliance upon the Wild Rose Licensing Agreements and the NDA, Plaintiff communicated with Defendant Wild Rose and its employees and agents, including defendants Bollmann and Carstensen, and revealed to them the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information.

58.    Defendants acquired access to the trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

59.    Defendants improperly obtained, disclosed or used Plaintiff's trade secrets to (i) gain revenues and profits for their own businesses, or for their own persons; (ii) obtain clients in the Hemispheric Gaming Market; (iii) further their own business transactions with customers; or (iv) gain or enhance their business reputation. As a result, Defendants violated the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:14031 et seq.

60.    As a proximate result of the misappropriation, misuse and violation, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.  As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

61.    Plaintiff is also entitled to exemplary damages because Defendants' misappropriation was fraudulent, willful or malicious.  Plaintiff is therefore entitled to exemplary damages in the sum of at least $4 million.

62.    Unless Defendants are enjoined and restrained by action of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

### THIRD CAUSE OF ACTION:
### <u>MISAPPROPRIATION OF TRADE SECRETS</u>
### AS AGAINST ALL DEFENDANTS

63.     Plaintiff was in possession of various trade secrets, including information included in, and elements of, the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.  The Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information derive potential independent economic value because  (i) considerable time and effort were spent by Plaintiff in developing them; (ii) the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were not generally known to the public; and (iii)  the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were not generally known to other persons who could obtain economic value from their disclosure or use.

64.     In the alternative, whether constituting trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

65.     Plaintiff's efforts to maintain the secrecy of the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were reasonable under the circumstances.  In reliance upon the Wild Rose Licensing Agreements and the NDA, Plaintiff communicated with Defendant Wild Rose and its employees and agents, including defendants Bollmann and Carstensen, and revealed to them the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information.

66.   Defendants acquired access to the trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

67.   Defendants improperly obtained, disclosed or used Plaintiff's trade secrets to (i) gain revenues and profits for their own businesses, or for their own persons; (ii) obtain clients in the Hemispheric Gaming Market; (iii) further their own business transactions with customers; or (iv) gain or enhance their business reputation.   As a result, Defendants misappropriated Plaintiff's trade secrets in violation of Louisiana civil law of trade secrets.

68.   As a proximate result of the misappropriation, misuse and violation, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.  As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

69.   Plaintiff is also entitled to exemplary damages because Defendants' misappropriation was fraudulent, willful or malicious.  Plaintiff is therefore entitled to exemplary damages in the sum of at least $4 million.

70.   Unless Defendants are enjoined and restrained by action of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF LOUISIANA UNFAIR BUSINESS PRACTICES ACT**
**UNDER LSA-R.S. § 51:1405, ET SEQ**
**AS AGAINST ALL DEFENDANTS**

71.     Plaintiff conceived, developed and owns the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.  These include original works protected by the Copyright Act, 17 USC §101 et seq, as well as trade secrets protected by the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.

72.     In the alternative, whether constituting original works, trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

73.     Plaintiff's efforts to maintain the secrecy of the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were reasonable under the circumstances.  In reliance upon the Wild Rose Licensing Agreements and the NDA, Plaintiff communicated with Defendant Wild Rose and its employees and agents, including defendants Bollmann and Carstensen, and revealed to them the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information.  Defendants acquired the trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

74.     By engaging in conduct which (i) violated the Copyright Act, 17 USC §101 et seq; or (ii) violated the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.; or (iii) violated the terms and conditions of the Wild Rose Licensing Agreements and the NDA, each Defendant engaged in unfair methods of

competition, or unfair or deceptive acts or practices.  Each Defendant did so to (i) gain revenues and profits for their own businesses, or for their own persons; (ii) obtain clients in the Hemispheric Gaming Market; (iii) further their own business transactions with customers; or (iv) gain or enhance their business reputation.  As a result, each Defendant violated the Louisiana Uniform Unfair Business Practices Act, LSA-R.S. §51:1405 et seq.

75.    As a proximate result of the unfair methods of competition, or unfair or deceptive acts or practices, and the statutory violation, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.  As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

76.    Plaintiff is also entitled to exemplary damages because Defendants' unfair acts or deceptive acts were fraudulent, willful or malicious.  Plaintiff is therefore entitled to exemplary damages in the sum of at least $4 million.

77.    Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

**FIFTH CAUSE OF ACTION:**
**UNFAIR BUSINESS PRACTICES**
**AS AGAINST ALL DEFENDANTS**

78.   Plaintiff conceived, developed and owns the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.  These include original works protected by the Copyright Act, 17 USC §101 et seq, as well as trade secrets protected by the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.

79.   In the alternative, whether constituting original works, trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

80.   Plaintiff's efforts to maintain the secrecy of the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were reasonable under the circumstances.  In reliance upon the Wild Rose Licensing Agreements and the NDA, Plaintiff communicated with Defendant Wild Rose and its employees and agents, including defendants Bollmann and Carstensen, and revealed to them the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information.  Defendants acquired the trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

81.   By engaging in conduct which (i) violated the Copyright Act, 17 USC §101 et seq; or (ii) violated the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.; or (iii) violated the terms and conditions of the Wild Rose Licensing Agreements and the NDA, each Defendant engaged in unfair methods of competition, or unfair or deceptive acts or practices.   Each Defendant did so to (i)

gain revenues and profits for their own businesses, or for their own persons; (ii) obtain clients in the Hemispheric Gaming Market; (iii) further their own business transactions with customers; or (iv) gain or enhance their business reputation.   As a result, each Defendant violated the Louisiana civil law against unfair business practices.

82.    As a proximate result of the unfair methods of competition, or unfair or deceptive acts or practices, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.  As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

83.    Plaintiff is also entitled to exemplary damages because Defendants' unfair acts or deceptive acts were fraudulent, willful or malicious.   Plaintiff is therefore entitled to exemplary damages in the sum of at least $4 million.

84.    Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

**SIXTH CAUSE OF ACTION:**
**FRAUD (BY SOME DEFENDANTS UNDER LSA-C.C. ART. 1953 ET SEQ)**
**AS TO DEFENDANTS WILD ROSE, BOLLMAN & CARSTENSEN**

85.   Plaintiff conceived, developed and owns the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.  These include original works protected by the Copyright Act, 17 USC §101 et seq, as well as trade secrets protected by the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.

86.   In the alternative, whether constituting original works, trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

87.   After entering into the Wild Rose Licensing Agreements and the NDA with Plaintiff, defendants Wild Rose, Bollman and Carstensen developed fraudulent intent, and intentionally violated its terms for the purpose of gaining illicit control and possession of the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information, in violation of LSA-C.C. Art. 1953.

88.   Defendants' misrepresentations and suppressions of the truth were made with the intention to obtain an unjust advantage over Plaintiff, in violation of LSA-C.C. Art. 1953.

89.   Each of defendants knew or had reason to know of these circumstances, including that the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff.

90. Plaintiff reasonably relied upon the Wild Rose Licensing Agreements and the NDA to assure that Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information would remain confidential, and that it would not be used only for the purposes expressed in those agreements.

91. As a proximate result of the fraud committed by Defendants, Plaintiff incurred the damages, losses and costs set forth above. Among other things, Plaintiff is entitled to damages for (i) its out-of-pocket losses (and other damages), in an amount to be determined at trial, but estimated to be not less than $1 million; (ii) the fair market value of the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information; or (iii) damages measured by profits from Defendants' unjust enrichment, estimated to be at least $1 million.

92. Plaintiff is also entitled to exemplary damages because Defendants' actions were fraudulent, willful or malicious. Plaintiff is therefore entitled to punitive damages in the sum of at least $4 million.

93. Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business. Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests. Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

**SEVENTH CAUSE OF ACTION:**
**FRAUD (BY SOME DEFENDANTS UNDER LSA-C.C. ART. 1953 ET SEQ)**
**AS AGAINST DUBUQUE RACING ASSOCIATION & CLEAR ADVANTAGE**

94.    Plaintiff conceived, developed and owns the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.  These include original works protected by the Copyright Act, 17 USC §101 et seq, as well as trade secrets protected by the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.

95.    In the alternative, whether constituting original works, trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

96.    Defendants' Dubuque RA and Clear Advantage misrepresentations and suppressions of the truth were made with the intention to obtain an unjust advantage over Plaintiff, in violation of LSA-C.C. Art. 1953.

97.    Each of defendants knew or had reason to know of these circumstances, including that the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information was the proprietary and confidential information owned by Plaintiff.

98.    Plaintiff reasonably relied upon the Wild Rose Licensing Agreements and the NDA to assure that Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information would remain confidential, and that it would not be used only for the purposes expressed in those agreements.

99.    As a proximate result of the fraud committed by Defendants Dubuque RA and Clear Advantage, Plaintiff incurred the damages, losses and costs set forth

above. Among other things, Plaintiff is entitled to damages for (i) its out-of-pocket losses (and other damages), in an amount to be determined at trial, but estimated to be not less than $1 million; (ii) the fair market value of the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information; or (iii) damages measured by profits from Defendants' unjust enrichment, estimated to be at least $1 million.

100. Plaintiff is also entitled to exemplary damages because Defendants' actions were fraudulent, willful or malicious. Plaintiff is therefore entitled to punitive damages in the sum of at least $4 million.

101. Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business. Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests. Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

### EIGHTH CAUSE OF ACTION:
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE
### BUSINESS ADVANTAGE
### AS AGAINST ALL DEFENDANTS

102. Plaintiff conceived, developed and owns the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information. These included original works protected by the Copyright Act, 17 USC §101 et seq, as well as trade secrets protected by the Louisiana Uniform Trade

Secrets Act, LSA R.S. §51:1431 et seq.

103.   In the alternative, whether constituting original works, trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

104.   There exists a prospective economic advantage derived by Plaintiff from existing and potential customers in the Hemispheric Gaming Market.  Existing customers can order new versions, new modules and upgrades of the Licensed Database Software Product.  Potential customers can order the Licensed Database Software Product for the first time.  Both existing and potential customers can contract for consulting services, market reports and site studies from Plaintiff using Proprietary Intellectual Property and Confidential Information.  For each such customer, and for each such use, Plaintiff can earn new revenues and new profits.

105.   Each Defendant had knowledge of such prospective economic advantages, based upon (i) the negotiation, execution and administration of the Wild Rose Licensing Agreements and the NDA; (ii) regular use of the Licensed Database Software Product or the Proprietary Intellectual Property and Confidential Information; or (iii) the knowledge and use on the part of other Defendants that worked in concert with that Defendant and whose knowledge may be imputed to that Defendant.

106.   Each Defendant committed one or more independently wrongful acts by (i) violating the Copyright Act, 17 USC §101 et seq; (ii) violating the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.; (iii) violating the Louisiana Uniform Unfair Business Practices Act, LSA-R.S. §51:1405 et seq.; (iv) breaching the Wild Rose Licensing Agreements or the NDA; (v) violating Louisiana civil law

by misappropriating trade secrets or using unfair or deceptive business practices; or (vi) committing fraud in violation of LSA-C.C. Art. 1953.

107.   Each Defendant intended to and did interfere with Plaintiff's prospective economic advantage.  As a proximate result of Defendants' intentional conduct, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.   As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

108.   In so interfering with Plaintiff's contractual relationship, Defendants acted fraudulently, oppressively and maliciously toward Plaintiff.   Therefore, Plaintiff is entitled to punitive damages against Defendants in an amount to be determined at trial of at least $4 million.

109.   Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

**NINTH CAUSE OF ACTION:**
**NEGLIGENT INTERFERENCE WITH PROSPECTIVE**
**BUSINESS ADVANTAGE**
**AS AGAINST ALL DEFENDANTS**

110.   Plaintiff conceived, developed and owns the Licensed Database Software Product and the Proprietary Intellectual Property and Confidential Information.  These included original works protected by the Copyright Act, 17 USC §101 et seq, as well as trade secrets protected by the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.

111.   In the alternative, whether constituting original works, trade secrets or not, the Licensed Database Software Product and Proprietary Intellectual Property and Confidential Information were proprietary and confidential information owned by Plaintiff and protected by the Wild Rose Licensing Agreements and the NDA.

112.   There exists a prospective economic advantage derived by Plaintiff from existing and potential customers in the Hemispheric Gaming Market.  Existing customers can order new versions, new modules and upgrades, of the Licensed Database Software Product.  Potential customers can order the Licensed Database Software Product for the first time.  Both existing and potential customers can contract for consulting services, market reports and site studies from Plaintiff using Proprietary Intellectual Property and Confidential Information.  For each such customer, and for each such use, Plaintiff can earn new revenues and new profits.

113.   Each Defendant had knowledge of such prospective economic advantages, based upon (i) the negotiation, execution and administration of the Wild Rose Licensing Agreements and the NDA; (ii) regular use of the Licensed Database Software Product or the Proprietary Intellectual Property and Confidential Information; or (iii) the knowledge and use on the part of other Defendants that

worked in concert with that Defendant and so that knowledge may be imputed to that Defendant.

114.   Each Defendant committed one or more independently wrongful acts by (i) violating the Copyright Act, 17 USC §101 et seq; (ii) violating the Louisiana Uniform Trade Secrets Act, LSA R.S. §51:1431 et seq.; (iii) violating the Louisiana Uniform Unfair Business Practices Act, LSA-R.S. §51:1405 et seq.; (iv) breaching the Wild Rose Licensing Agreements or the NDA; (v) violating Louisiana civil law by misappropriating trade secrets or using unfair or deceptive business practices; or (vi) committing fraud in violation of LSA-C.C. Art. 1953.

115.   Each Defendant negligently interfered with Plaintiff's prospective economic advantage.   As a proximate result of Defendants' negligent conduct, Plaintiff has suffered (and will continue to suffer) monetary damages, losses and costs.  As a direct and proximate result of Defendants' use and violations, Plaintiff has suffered (and will continue to suffer) irreparable injury to its business operations, intellectual property, goodwill and reputation. Plaintiff is therefore entitled to monetary damages as well as injunctive relief.

116.   In so interfering with Plaintiff's contractual relationship, Defendants acted fraudulently, oppressively and maliciously toward Plaintiff.   Therefore, Plaintiff is entitled to punitive damages against Defendants in an amount to be determined at trial of at least $4 million.

117.   Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial

proceedings to protect its interests. Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.

## TENTH CAUSE OF ACTION
## NEGLIGENCE UNDER LSA-C.C. ART. 2316
### AS AGAINST DEFENDANTS WILD ROSE, BOLLMANN & CARSTENSEN

118.  In December 2007 and dates thereafter, Plaintiff entered into two or more conventional obligations, the Wild Rose Licensing Agreements and the NDA. Under the Wild Rose Licensing Agreements or the NDA, Wild Rose represented, warranted, covenanted and agreed that Wild Rose, its affiliates, employees and agents, including defendants Bollman and Carstensen, would not, disclose, use, transfer or sell the Licensed Database Software Products or any Confidential Proprietary Intellectual Property and Confidential Information provided by Plaintiff.

119.  Based on these contractual obligations, and the business relationship that grew out of them, Defendants Wild Rose, Bollman and Carstensen each owed a duty of care to Plaintiff.  The duty of care included the duty not to disclose, use, transfer or sell the Licensed Database Software Products or any Proprietary Intellectual Property and Confidential Information provided by Plaintiff.

120.  Each of defendants Wild Rose, Bollman and Carstensen  breached its duty of care to Plaintiff by disclosing, using, transferring or selling to third parties, including defendants Clear Advantage and Dubuque Racing Association, the Licensed Database Software Products and Confidential Proprietary Intellectual Property and Confidential Information.  As a result, each defendant violated LSA-C.C. Art 2316, which states that "Every person is responsible for the damage he

occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

121.   As a direct and proximate result of each Defendant's breach of duty, Plaintiff has suffered monetary damages, losses and costs.

122.   Defendants acted fraudulently, oppressively and maliciously toward Plaintiff.  Therefore, Plaintiff is entitled to punitive damages against Defendants in an amount to be determined at trial of at least $4 million.

## ELEVENTH CAUSE OF ACTION:
## BREACH OF CONVENTIONAL OBLIGATIONS – WILD ROSE LICENSING AGREEMENTS AND NDA UNDER LSA-C.C. ART. 1994
### AS AGAINST DEFENDANT WILD ROSE

123.   In December 2007 and dates thereafter, Obligee Plaintiff entered into two or more conventional obligations, the Wild Rose Licensing Agreements and the NDA.

124.   Under the Wild Rose Licensing Agreements or the NDA, Wild Rose represented, warranted, covenanted and agreed that Wild Rose, its affiliates, employees and agents, including defendants Bollman and Carstensen, would not disclose, use, transfer or sell (i) the Licensed Database Software Products; or (ii) any Proprietary Intellectual Property and Confidential Information provided by Plaintiff.

125.   Pursuant to the Wild Rose Licensing Agreements or the NDA, Plaintiff provided to Wild Rose a license to use the Licensed Database Software Products and Proprietary Intellectual Property and Confidential Information for casino database marketing at the Wild Rose Casino and Resort in Clinton, Iowa, and the Wild Rose Casino at Emmetsburg, Iowa.   Plaintiff performed all obligations, terms and conditions required under those agreements, other than terms and conditions from

which it was excused.

126.   Wild Rose breached its obligations under the Wild Rose Licensing Agreements or the NDA, by disclosing, using, transferring or selling to third parties, including defendants Clear Advantage and Dubuque Racing Association, the Licensed Database Software Products and Proprietary Intellectual Property and Confidential Information.  As a result, Wild Rose violated Louisiana Civil Code Art. 1994, which states that an obligor is liable for the "damages caused by his failure to perform a conventional obligation."

127.   As a direct and proximate result of Clear Advantage's breach, Plaintiff suffered the damages, losses and costs set forth above, in an amount to be proven at trial, but estimated by Plaintiff to be at least $1 million.

128.   The NDA provides for the remedy of special damages, including injunctive relief.  Unless Defendants are enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff's business.  Plaintiff has no adequate remedy at law for the injuries, in that Defendants will continue to misappropriate and use Plaintiff's original works and trade secrets, and so Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.  Besides statutory and common law rights to injunctive relief, Plaintiff has a right to injunctive relief under the Wild Rose Agreements and the NDA.


**TWELFTH CAUSE OF ACTION:**
**BREACH OF CONVENTIONAL OBLIGATION – JEFFERSON COUNTY**
**CASINO FEASIBILITY STUDY UNDER LSA-C.C. ART. 1994**
**AS AGAINST DEFENDANT WILD ROSE**

129.   On or about May 30, 2013, Wild Rose requested that Plaintiff provide

an in-depth, formal site evaluation and market analysis for a new Wild Rose casino development project in Jefferson County, Iowa. Wild Rose contracted for casino market research, consulting services, and a casino market survey report in connecting with the location of a new Wild Rose casino to be located in Jefferson County, Iowa.

130.   Under the Jefferson County Casino Feasibility Study Agreement, Plaintiff's "on the come" model was used.  Wild Rose agreed that it would compensate Plaintiff in two ways:  (i) payment of $5,000 up front, in lieu of a normal fee exceeding $50,000; and (ii) by licensing the Licensed Database Software Product for use at the new Wild Rose casino in Jefferson County, if it was eventually licensed and built.

131.   Pursuant to the Jefferson County Casino Feasibility Study Agreement, Plaintiff provided to Wild Rose the casino market research, consulting services, and a casino market survey report required.  The Jefferson County Feasibility Study was used by Wild Rose and submitted to the IRGC as part of the Wild Rose application for a casino license.  In May 2014, the IRGC approved Wild Rose's application and the Wild Rose Casino in Jefferson County is now being built.  It will be open next year, but unfortunately, Wild Rose has already told Plaintiff that it refuses to install the Licensed Database Marketing Software Product.

132.   Plaintiff performed all obligations, terms and conditions required of Plaintiff under those agreements, other than terms and conditions from which it was excused.

133.   Wild Rose breached its obligations by not installing the Licensed Database Marketing Software Product, or committed an anticipatory breach by stating its refusal to so act.  As a result, Wild Rose violated Louisiana Civil Code

Art. 1994, which states that an obligor is liable for the "damages caused by his failure to perform a conventional obligation."

134.   As a direct and proximate result of Wild Rose's breach, Plaintiff suffered the damages, losses and costs in an amount to be proved at trial, but not less than $45,000.


## THIRTEENTH CAUSE OF ACTION:
## FOR QUANTUM MERUIT – CASINO FEASIBILITY STUDY SERVICES RENDERED UNDER LSA-C.C. ART. 1994
### AS AGAINST DEFENDANT WILD ROSE

135.   On or about May 30, 2013, Wild Rose requested that Plaintiff provide an in-depth, formal site evaluation and market analysis for a new Wild Rose casino development project in Jefferson County, Iowa. Wild Rose contracted for casino market research, consulting services, and a casino market survey report in connecting with the location of a new Wild Rose casino to be located in Jefferson County, Iowa.

136.   Under the Jefferson County Casino Feasibility Study Agreement, Plaintiff's "on the come" model was used.   Wild Rose agreed that it would compensate Plaintiff in two ways:  (i) payment of $5,000 up front, in lieu of a normal fee exceeding $50,000; and (ii) by licensing the Licensed Database Software Product for use at the new Wild Rose casino in Jefferson County, if it was eventually licensed and built.

137.   Pursuant to the Jefferson County Casino Feasibility Study Agreement, Plaintiff provided to Wild Rose the casino market research, consulting services, and a casino market survey report required.  The Jefferson County Feasibility Study was used by Wild Rose and eventually submitted to the IRGC as part of the Wild Rose

application for a casino license.  In May 2014, the IRGC approved Wild Rose's application and the Wild Rose Casino in Jefferson County is now being built.  It will be open next year, but unfortunately, Wild Rose has already told Plaintiff that it refuses to install the Licensed Database Marketing Software Product.

138.  Plaintiff performed all obligations, terms and conditions required of Plaintiff under those agreements, other than terms and conditions from which it was excused.

139.  Plaintiff performed all obligations, terms and conditions required of Plaintiff under those agreements, other than terms and conditions from which it was excused.

140.  Wild Rose has refuse plaintiff's demands for payment and now owes to Plaintiff the reasonable value of the services Plaintiff rendered.

## H.  DEMAND FOR JURY TRIAL

141.  Plaintiff hereby demands a trial by jury for all issues triable to a jury, pursuant to Federal Rules of Civil Procedure Rule 38(b).

## I.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  For contractual damages under the Wild Rose Licensing Agreements, the NDA and the Jefferson County Casino Feasibility Study Agreement, including but not limited to unjust enrichment, in an amount to be proven at trial, but estimated by Plaintiff to be at least $1 million.

2.  For tort damages in an amount to be proven at trial, but estimated by Plaintiff

to be at least $1 million.

3.    For damages from fraud in an amount to be proven at trial, but estimated by
      Plaintiff to be at least $1 million.

4.    For statutory damages, for (i) violating the Copyright Act, 17 USC §101 et
      seq; (ii) violating the Louisiana Uniform Trade Secrets Act, LSA R.S.
      §51:1431 et seq.; or (iii) violating the Louisiana Uniform Unfair Business
      Practices Act, LSA-R.S. §51:1405 et seq., all in amounts to be proven at trial,
      but estimated by Plaintiff to be at least $1 million.

5.    For exemplary and punitive damages in an amount to be awarded by the jury,
      but requested by Plaintiff to be at least $4 million.

6.    For a temporary restraining order, preliminary injunction and permanent
      injunction, and for other forms of equitable relief or special damages.

7.    For prejudgment interest and post-judgment interest.

8.    For reasonable attorney's fees, third party costs, or statutory fees and costs,
      all according to proof, or as allowed by contract, statute or law.

9.    For costs of the suit incurred herein. And

10.   For such other and further relief as the Court may deem just and proper.

                        Respectfully submitted,

                        THE DOMINIQUE LAW FIRM, LLC


                        s/Philip A. Dominique
                        PHILIP A. DOMINIQUE (27336)
                        209 Hwy. 22 West, Suite G
                        Madisonville, LA  70447
                        Telephone: (985) 845-8100
                        Facsimile:  (985) 845-1990
                        Email: pdominique@dominiquelawfirm.com

                             - & -

**DAVID A. ORIOL, LLC**
**DAVID A. ORIOL (Bar #28706)**
209 Hwy. 22 West, Suite G
Madisonville, LA  70447
Telephone:  (985) 845-2227
Facsimile:   (985) 845-2229
Email: dao@oriollaw.com
**ATTORNEYS FOR PLAINTIFF**
**GLENN GOLDEN dba G2 DATABASE**
**MARKETING**